IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

NASHVILLE, : : : DECEMBER TERM, 1872.

## ZACHARY v. THE STATE.

1. CRIMINAL LAW. *Jury. Ballots not drawn by child under ten years good. When.* On an indictment for larceny, where the record shows that "a boy" drew the grand jury, it will be presumed that he was of the proper and lawful age.

   Code cited: Sec. 4015.

2. SAME. *Pleading and practice. Nolle prosequi. Second indictment for same offense good.* It is no error to *nol. pros.* one indictment and prefer a new one to the grand jury produced on the same facts.

3. SAME. *Same.* Where the question of "former acquittal" is raised by motion, such motion will be overruled, as that fact must be shown by plea setting forth the record of the former trial and acquittal.

FROM DAVIDSON.

Appeal from the Criminal Court. THOS. N. FRA-ZIER, Judge.

1—VOL. 7.

M. M. BRIEN for complainant.

ATTORNEY-GENERAL HEISKELL for the State.

J. Zachary and Louis Tucker were jointly indicted in the Criminal Court of Davidson county. The indictment contained four counts, the first of which was for stealing $965, the property of Hester Ann Stephens, and the other for receiving the same money, knowing it to be stolen, and for aiding in stealing, etc.— charged in different aspects.

At the May term, 1872, Zachary alone being on trial, his counsel moved the court to quash the indictment, on the ground that it was improperly found, there being, as the record shows, an indictment pending for the same identical offense, but it appearing that a *nolle prosequi* had been entered as to the first indictment, the motion was overruled.

Thereupon, defendant moved the court to require the Attorney-General to put the defendant on trial on the first count of the indictment, because he had been tried before and acquitted on the other three counts, but this motion was refused.

Thereupon, the defendant was arraigned on the indictment and all the counts, and pleaded not guilty to the same; and thereupon, "to try the issue joined came a jury," etc., who found the defendant guilty of larceny as charged in the first count, and sentenced him to five years in the penitentiary.

After motions in arrest of judgment and for a new trial were overruled, defendant appealed to this court.

Defendant's counsel rely on several grounds for

Zachary *v.* The State.

reversal of the judgment, which have been pressed with much earnestness.    We will dispose of them in detail.

1. It is argued that the indictment was not found by a properly appointed grand jury, for the reason that the record states that "the names of the jurors were placed in a hat and were regularly drawn there-from by a boy, when the following good and lawful men," etc.

The objection is, that the record does not show that the names were drawn out "by a child under ten years of age," as prescribed by sec. 4015 of the Code.    As the record shows that the names were "regularly drawn by a boy," it is to be presumed that the boy was under ten years of age. . Mr. Webster defines "a boy" to be "a male child from birth to the age of puberty; but, in general, applied to males under ten or twelve years of age."

2. The indictment was improperly sent to the grand jury, when there was then pending in the same court another indictment for the same offense.

A defendant is not allowed in criminal, as in civil actions, to plead in abatement that another action is pending for the same offense.    1 Arch., 358; 2 Hawks, ch. 34, sec. 1.    But it appears that "a *nolle prosequi* had been enterred as to said first indictment." There was, therefore, no error in overruling the motion to quash the second indictment.

3. It is said the prisoner was improperly put upon trial the second time upon the three last counts, because he had been acquitted on them on a former

trial. This question was raised by motion, and not by plea of "former acquittal." It was properly overruled. The question should have been raised by plea, setting forth the record of the former trial and acquittal. But even if there was error, it could not avail the defendant now, as he was again acquitted on the three counts referred to. He appeals from a judgment of conviction on the first count, having been acquitted on the other counts.

4. After the court overruled the motion to put defendant on trial upon the first count alone, it is said the jury ought to have been sworn to try the *issues*, and not the issue, as there were four counts in the indictment. The record shows that "the defendant was duly arraigned upon the indictment and all the counts therein, and pleaded not guilty to the same." It is clear that the plea of "not guilty" was pleaded to all the counts, and being *nomen collectivum*, it covered all the issues. Besides, as already stated, defendant was acquitted on all the counts except the first, and cannot now complain that he was acquitted on counts to which he had not pleaded. But the plea of not guilty was applicable to all the counts, and he was tried on all, and had the benefit of this plea on all the counts.

5. It is argued that there is no legal evidence upon which the conviction ought to stand. It is said that Hester Ann Stephens, the prosecutrix, and the alleged owner of the money, is completely discredited, and this being so, there is no other evidence of the *corpus delicti*. It is true, as argued, that when a

witness swears falsely and corruptly, with the view of imposing upon the jury, in any one matter, the testimony of such a witness should be entirely rejected and disregarded by the jury in making up their verdict. It is also true, that if Hester Ann was the only witness who testified as to the *corpus delicti,* and if the jury believed that her testimony was corruptly false in any matter, then they rendered an erroneous verdict. But if the jury did not believe that her testimony was corruptly false, or, if they relied upon the testimony of other witnesses in finding that the *corpus delicti* was established, then the verdict will stand.

In his charge to the jury, the Judge said: "It is a rule of law that if a witness swears knowingly false about any material fact in issue or being tried, he is wholly discredited and should not be believed on any fact, but it ought to be such corrupt swearing that it would amount to perjury." Again, in response to special request, the court instructed the jury: "That if, upon the whole proof, the jury are of opinion that Miss Stephens is wholly unworthy of credit in a court of justice on her oath, they ought to disregard her testimony. That the loss of the money charged in the indictment, as well as the description specified, or some part of both, must be proved by satisfactory evidence, that is, to the satisfaction of the jury, before they could convict." He said further: "That the jury were the exclusive judges of the credibility of the witnesses; that they could exclude any one or all of the witnesses' testimony, or none of them, just as they thought proper."

It is clear that the defendant had the full benefit of a clear and explicit exposition of the rules of evidence applicable to the question, and under this charge the jury have based their verdict, either upon Hester Ann's testimony, as they had a right to do as judges of the credibility of the witnesss, or upon other testimony, excluding that of Hester Ann. Whether the verdict was based upon the testimony of Hester Ann alone, or as corroborated by other testimony, or altogether on the testimony of Mary Stephens, as to the *corpus delicti* we cannot say that the verdict was fully sustained.

6. It is insisted that the court erred in allowing the witness Watson to detail the conversations of Tucker, jointly indicted with defendant, which conversations were in the absence of defendant. Upon looking to the testimony of Watson, we find that he details the arrest of Tucker at Cairo, his bringing him back to Nashville, his finding portions of the money under the guidance of Tucker; but we find no conversation detailed in which Tucker made any allusion to defendant's connection with the money, until the two were brought face to face, when Tucker charged defendant with having procured the money and handed it to him, to which charge defendant made no response. The testimony of Watson is not, therefore, obnoxious to the objections made.

7. It is next argued that certain declarations, admissions and confessions of defendant were improperly admitted as evidence, because they were procured by promises of reward and favor, and were not freely

and voluntarily made.    For the defendant, it is in-
sisted that the confessions were made by him under
the influence of a promise of fifty dollars, and that
he should not be hurt by Hester Stephens; but it is
apparent, notwithstanding the statements of his mother
and brothers, from his own declaration, that no such
influence operated to induce the confession made in
the presence of detective Watson.    He had stated that
he had taken the money out of the drawer and had
given it to Tucker.    Tucker had gone off, but was
captured, and when in the presence of defendant, de-
fendant said to him that he hàd "blown on him be-
cause he had run away with all the money."    This
fact presents strong evidence that the motive ·for
making this confession or declaration was a feeling
of revenge against Tucker for running off with the
money, rather than any hope or expectation of getting
the fifty dollars which was offered ·to· him if he would
tell where the money was.    He knew, also, that being
in the room when the money was stolen, and know-
ing where it was kept, that the circumstances pointing
to his guilt were so strong that no denial of it could
avert suspicion.    Hester Stephens admitted that she
told defendant she would give him fifty dollars if he
would tell where the money was, but denies that she
said defendant would not be hurt.    It is clear, from
his own declarations, that defendant did not believe
or expect that she would give him fifty dollars to
tell, and this offer had no influence in inducing his
statements.    The Circuit Judge did not believe that
the confession was induced by any improper influence

brought to bear upon him, and in this we think he was correct.

The testimony of Watson detailing the interview between Tucker and defendant after Tucker had been arrested at Cairo and brought back to Nashville, fixes the guilt of defendant beyond any reasonable doubt. Watson says when he brought them together, defendant not then being under arrest, Tucker said to defendant: "If you had not squealed on me, I would not have said anything against you." Defendant said nothing. Tucker said: "You know you got the money out of the wardrobe and gave it to me; that you gave me the key to have one fixed by, and took the money; that we went into the bottom together, I took it, and was to divide with you." Defendant did not say a word, except "you run off with the money is the reason I blowed on you."

We are of opinion that the confessions and declarations of defendant were properly admitted as evidence, and that there is no error in the record for which the judgment below should be disturbed.

Let the judgment be affirmed.